## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BILLY W. RUSSELL, Individually, and as | * | |
| Personal Representative of the Estate of | | |
| MARJORIE J. RUSSELL, deceased | * | |
| 701 Sequoia Drive | | |
| Edgewood, Maryland 21040 | * | |
| | | |
| Plaintiff | * | Case No.: |
| | | |
| v. | * | |
| | | |
| SELECT MEDICAL CORPORATION | * | |
| 4714 Gettysburg Road | | |
| Mechanicsburg, Pennsylvania 17055 | * | |
| | | |
| **Serve on:** | * | |
| The Corporation Trust Company | | |
| Corporation Trust Center | * | |
| 1209 Orange Street | | |
| Wilmington, Delaware 19801 | * | |
| | | |
| and | * | |
| | | |
| SELECT MEDICAL | * | |
| OF PENNSYLVANIA, INC. | | |
| 4716 Gettysburg Road | * | |
| Mechanicsburg, Pennsylvania 17055 | | |
| | * | |
| **Serve on:** | | |
| The Corporation Trust Company | * | |
| Corporation Trust Center | | |
| 1209 Orange Street | * | |
| Wilmington, Delaware 19801 | | |
| | * | |
| and | | |
| | * | |

SELECT MEDICAL
OF MECHANICSBURG, INC.                    *
4716 Gettysburg Road
Mechanicsburg, Pennsylvania 17055         *

    **Serve on:**                         *
    The Corporation Trust Company
    Corporation Trust Center              *
    1209 Orange Street
    Wilmington, Delaware 19801             *

   and                                   *

SELECT SPECIALTY HOSPITAL –               *
CENTRAL PENNSYLVANIA
YORK CAMPUS                               *
1001 South George Street, 5th Floor
York, Pennsylvania 17405                  *

    **Serve on:**                         *
    Select Medical
    Joel T. Veit, Treasurer               *
    4714 Gettysburg Road
    Mechanicsburg, Pennsylvania 17055     *

   and                                   *

SELECT SPECIALTY HOSPITAL –               *
CENTRAL PENNSYLVANIA, L.P.
1001 South George Street, 5th Floor       *
York, Pennsylvania 17405
                                          *

    **Serve on:**
    The Corporation Trust Company         *
    Corporation Trust Center
    1209 Orange Street                    *
    Wilmington, Delaware 19801
                                          *

2

SELECT SPECIALTY HOSPITALS, INC.   *
4714 Gettysburg Road
Mechanicsburg, Pennsylvania 17055      *

    **Serve on:**                                  *
    The Corporation Trust Company
    Corporation Trust Center                 *
    1209 Orange Street
    Wilmington, Delaware 19801             *

    and                                          *

SUMMIT HEALTH                               *
101 North 7th Street
Chambersburg, Pennsylvania 17201       *

    and                                          *

SUMMIT HOSPITALISTS                    *
112 North 7th Street
Chambersburg, Pennsylvania 17201       *

    **Serve on:**                                  *
    Summit Physician Services
    785 Fifth Street, Suite 3                  *
    Chambersburg, Pennsylvania 17201
                                                 *

    and                                          *

SUMMIT PHYSICIAN SERVICES
785 Fifth Street, Suite 3                      *
Chambersburg, Pennsylvania 17201
                                                 *

    **Serve on:**
    Summit Physician Services                  *
    785 Fifth Street, Suite 3
    Chambersburg, Pennsylvania 17201       *

3

and                                                    *

RASHID ANJUM, M.D.                                     *
101 North 7th Street
Chambersburg, Pennsylvania 17201                       *

   and                                                 *

WELLSPAN INFECTION DISEASE                             *
SPECIALISTS
1001 South George Street                               *
4th Floor, Ketterman Building
York, Pennsylvania 17405                               *

   **Serve on:**                                       *
   Wellspan Medical Group
   1001 South George Street                            *
   4th Floor, Ketterman Building
   York, Pennsylvania 17405                            *

   and                                                 *

WELLSPAN MEDICAL GROUP                                 *
1001 South George Street
4th Floor, Ketterman Building                          *
York, Pennsylvania 17405

   **Serve on:**                                       *
   Wellspan Medical Group
   1001 South George Street                            *
   4th Floor, Ketterman Building
   York, Pennsylvania 17405                            *

   and                                                 *

SETH QUARTEY, M.D.                                     *
1001 South George Street

4

4th Floor, Ketterman Building       *

York, Pennsylvania 17405

                                         *

      Defendants

_____

## COMPLAINT

Plaintiff Billy W. Russell, individually as the surviving spouse of, and as personal representative of the Estate of, Marjorie J. Russell ("Mrs. Russell"), deceased, through his attorneys, Donald B. Hoyt, and Blakey, Yost, Bupp & Rausch, LLP, and Paul D. Bekman, Aryeh M. Rabinowitz, and Bekman, Marder, and Adkins, LLC, sue the Defendants, Select Medical Corporation, Select Medical of Pennsylvania, Inc., Select Medical of Mechanicsburg, Inc., Select Specialty Hospital—Central Pennsylvania York Campus, Select Specialty Hospital—Central Pennsylvania, L.P., and Select Specialty Hospitals, Inc. (collectively, "Select"), Summit Health, Summit Hospitalists, and Summit Physician Services (collectively, "Summit"), Rashid Anjum, M.D., Wellspan Infectious Disease Specialists, and Wellspan Medical Group (collectively, "Wellspan"), and Seth Quartey, M.D., and state as follows:

## JURISDICTION AND VENUE

1.      The amount of this claim exceeds Seventy-Five Thousand Dollars ($75,000.00).

2.      Plaintiff Billy W. Russell is the surviving spouse, of, and personal representative of the Estate of Marjorie J. Russell. Mr. Russell is a citizen and resident of Maryland. Mr. Russell was appointed personal representative of the Estate of Marjorie J. Russell on September 12, 2016, by Derek Hopkins, Register of Wills for Harford County, Maryland. *See* Letter of Administration, attached as **Exhibit A**.

3.      Jurisdiction is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1332, as this controversy involves a dispute between citizens of different states and the amount in controversy exceeds the jurisdictional requirement.

4.      Defendant Select Medical Corporation is a Delaware corporation with its principal office in Pennsylvania.

5.      At all relevant times, Select Medical Corporation held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

6.      Defendant Select Medical of Pennsylvania, Inc. is a Delaware corporation with its principal office in Pennsylvania.

7.      At all relevant times, Select Medical of Pennsylvania, Inc. held itself out to the public, including Mrs. Russell, as a provider of broad range of medical

services, including but not limited to the diagnosis and treatment of infectious diseases.

8.      Defendant Select Medical of Mechanicsburg, Inc. is a Delaware corporation with its principal office in Pennsylvania.

9.      At all relevant times, Select Medical of Mechanicsburg, Inc. held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

10.     Defendant Select Specialty Hospital—Central Pennsylvania York Campus is a Pennsylvania corporation with its principal office in Pennsylvania.

11.     At all relevant times, Select Specialty Hospital—Central Pennsylvania York Campus held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

12.     Defendant Select Specialty Hospital—Central Pennsylvania, L.P. is a Delaware limited partnership with its principal office in Pennsylvania.

13.     At all relevant times, Select Specialty Hospital—Central Pennsylvania, L.P. held itself out to the public, including Mrs. Russell, as a

provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

14.     Defendant Select Specialty Hospitals, Inc. is a Delaware corporation with its principal office in Pennsylvania.

15.     At all relevant times, Select Specialty Hospitals, Inc. held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

16.     Defendant Summit Health is a Pennsylvania non-profit, non-stock corporation with its principal office in Pennsylvania.

17.     At all relevant times, Summit Health held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

18.     Defendant Summit Hospitalists is a Pennsylvania corporation with its principal office in Pennsylvania.

19.     At all relevant times, Summit Hospitalists held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

20.     Defendant Summit Physician Services is a Pennsylvania non-profit, non-stock corporation with its principal office in Pennsylvania.

21.     At all relevant times, Summit Physician Services held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

22.     Rashid Anjum, M.D., is an internal medicine hospitalist physician licensed to practice in Pennsylvania. At all relevant times, Dr. Anjum held himself out to the public, and to Mrs. Russell, as an experienced, competent and able physician, possessing and providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to such a practice and, as such, owed a duty to Mrs. Russell to render that degree of care and treatment to her which is ordinarily rendered by those who devote special study and attention to the practice of internal medicine.

23.     At all relevant times, Dr. Anjum held himself out to the public, including to Mrs. Russell, as a provider of hospitalist services relating to the field of internal medicine, including but not limited to internal medicine related to the care and treatment of a hospital patient with infectious diseases.

24.     At all relevant times, Select Medical Corporation, Select Medical of Pennsylvania, Inc., Select Medical of Mechanicsburg, Inc., Select Specialty

Hospital—Central Pennsylvania York Campus, Select Specialty Hospital—Central Pennsylvania, L.P., and Select Specialty Hospitals, Inc. (collectively, "Select"), and Summit Health, Summit Hospitalists, and Summit Physician Services (collectively, "Summit"), were acting individually and/or by and through its actual and/or apparent agents, servants, and employees, including but not limited to Dr. Anjum.

25.    Defendant Wellspan Infectious Disease Specialists is a Pennsylvania corporation with its principal office in Pennsylvania.

26.    At all relevant times, Wellspan Infectious Disease Specialists held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

27.    Defendant Wellspan Medical Group is a Pennsylvania non-profit, non-stock corporation with its principal office in Pennsylvania.

28.    At all relevant times, Wellspan Medical Group held itself out to the public, including Mrs. Russell, as a provider of broad range of medical services, including but not limited to the diagnosis and treatment of infectious diseases.

29.    Seth Quartey, M.D., is an infectious disease physician licensed to practice in Pennsylvania. At all relevant times, Dr. Quartey held himself out to the

public, and to Mrs. Russell, as an experienced, competent and able physician, possessing and providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to such a practice and, as such, owed a duty to Mrs. Russell to render that degree of care and treatment to her which is ordinarily rendered by those who devote special study and attention to the practice of infectious disease medicine.

30.    At all relevant times, Dr. Quartey held himself out to the public, including to Mrs. Russell, as a provider of services relating to the field of infectious disease medicine, including but not limited to the diagnosis and treatment of infectious diseases.

31.    At all relevant times, Select Medical Corporation, Select Medical of Pennsylvania, Inc., Select Medical of Mechanicsburg, Inc., Select Specialty Hospital—Central Pennsylvania York Campus, Select Specialty Hospital—Central Pennsylvania, L.P., and Select Specialty Hospitals, Inc. (collectively, "Select"), and Wellspan Infectious Disease Specialists, and Wellspan Medical Group (collectively, "Wellspan"), were acting individually and/or by and through its actual and/or apparent agents, servants, and employees, including but not limited to Dr. Quartey.

**Factual Background**

32.    Plaintiff adopts and incorporates herein all preceding paragraphs.

33.    On June 1, 2016, Mrs. Russell presented to Upper Chesapeake Medical Center in Maryland with low blood pressure, a cough, a low grade fever, weakness, confusion, and lethargy. She was previously treated for pneumonia in April of 2016, and was also on an immunosuppressant because of kidney transplants in 1997 and 2014. A previous MRI taken at Upper Chesapeake revealed a subacute facture at the T-11 level. She was placed on a ventilator.

34.    After completing imaging studies, Upper Chesapeake considered the possibility that Mrs. Russell was suffering from an infection and placed her on broad spectrum antibiotics. The infectious disease specialist at Upper Chesapeake, however, could not locate any specific infection.

35.    On June 28, 2016, once Mrs. Russell's condition was more stable, she was transferred to Select Specialty Hospital in York, Pennsylvania—a full-care facility—to wean her off of the ventilator. During her stay at Select Specialty, she was cared for by Dr. Anjum, as well as followed by Dr. Quartey, an infectious disease specialist.

36.    On July 6, 2016, a blood culture grew the bacterium Nocardia farcinica ("NF"). Although previous blood cultures had been negative for bacteria,

Drs. Anjum and Quartey began Mrs. Russell on Bactrim and Meropenem—the proper antibiotic treatments for NF. A repeat blood culture was negative. In breach of the standard of care, Drs. Anjum and Quartey discontinued both antibiotics after only a 10-day course, on July 24, 2016, even though: 1) NF most often occurs in an immunocompromised patient, like Mrs. Russell; 2) NF often disseminates from the lungs, and Mrs. Russell presented with a pulmonary process; 3) once NF disseminates it can cause pulmonary, thoracic, and neurologic issues, such as Mrs. Russell had; 4) NF is slow-growing and often does not appear in routine blood cultures; and 5) the proper course of treatment for NF is long-term antibiotics for six months to a year.

37.     Mrs. Russell was eventually weaned off of the ventilator, and was transferred to Bel Air Health and Rehabilitation in Maryland, a subacute rehabilitation facility, on July 27, 2016. While at the rehab facility, she was confused and restless, and complained of back pain.

38.     Because sepsis was suspected, Mrs. Russell was taken to the emergency room at Upper Chesapeake Medical Center in Maryland on August 3, 2016. MRI and CT imaging at the ER showed multiple new spinal issues, along with the known fracture at T-11, as well as new issues in her brain.

39.     Mrs. Russell was admitted to the ICU at University of Maryland

Medical Center ("UMMC") on August 4, 2016. On the day of her admission to

UMMC, Mrs. Russell received a letter from Select, dated July 26, 2016, stating

that she had been exposed to a hospital-acquired infection during her time at

Select. *See* Letter from Select, attached as **Exhibit B**. After contacting the Quality

Manager at Select, Mrs. Russell was informed that the infection was, in fact, NF.

UMMC re-started her on Bactrim and Meropenem on August 6, 2016.

40.     Repeat imaging at UMMC showed that Mrs. Russell had continuing

changes in her lungs, spine, and brain due to the ongoing NF infection. She

received cardiac clearance for spine stabilization surgery that was scheduled for

August 22, 2016.

41.     On August 22, 2016, Mrs. Russell suffered a respiratory complication

due to a mucous plug. She was terminally extubated and passed away on August

26, 2016.

### COUNT I – SURVIVAL CLAIM – MEDICAL NEGLIGENCE
(Select, Summit, Dr. Anjum, Wellspan, and Dr. Quartey)

42.     Plaintiff adopts and incorporates by reference herein all preceding

paragraphs.

43.     Plaintiff brings this survival action under 20 Pa. C.S.A. § 3373 and 42

Pa. C.S.A. § 8302.

44.     At all relevant times, Defendants were engaged in a healthcare

provider—patient relationship.  As such, Defendants owed Mrs. Russell a duty to provide her with the appropriate standard of medical care and treatment of reasonably prudent health care providers, including in the diagnosis and treatment of infectious diseases.

45.    During the course of their relationship, Dr. Anjum was acting as the actual and/or apparent agent, servant, or employee of Select Medical Corporation, Select Medical of Pennsylvania, Inc., Select Medical of Mechanicsburg, Inc., Select Specialty Hospital—Central Pennsylvania York Campus, Select Specialty Hospital—Central Pennsylvania, L.P., and Select Specialty Hospitals, Inc. (collectively, "Select"), and Summit Health, Summit Hospitalists, and Summit Physician Services (collectively, "Summit"). The above-mentioned Defendants are, therefore, liable for Dr. Anjum's conduct.

46.    During the course of their relationship, Dr. Quartey was acting as the actual and/or apparent agent, servant, or employee of Select Medical Corporation, Select Medical of Pennsylvania, Inc., Select Medical of Mechanicsburg, Inc., Select Specialty Hospital—Central Pennsylvania York Campus, Select Specialty Hospital—Central Pennsylvania, L.P., and Select Specialty Hospitals, Inc. (collectively, "Select"), and Wellspan Infectious Disease Specialists, and Wellspan Medical Group (collectively, "Wellspan"). The above-mentioned Defendants are,

therefore, liable for Dr. Quartey's conduct.

47.     Defendants breached their aforementioned duty to the Mrs. Russell in that they:

a.     Failed to continue Mrs. Russell on the course of Bactrim and Meropenem for more than 10 days, even though the blood culture of July 6, 2016, came back positive for Nocardia farcinica (NF), for which the standard of care requires antibiotic treatment for six months to a year;

b.     failed to appreciate that the NF infection was likely, even though her next blood culture did not show NF because: (1) she was already immunocompromised; (2) NF often disseminates from the lungs; (3) once NF disseminates it can cause pulmonary, thoracic, and neurologic issues; and (4) NF is slow-growing and often does not appear in routine blood cultures.

c.     were otherwise negligent, careless, and reckless.

48.     As a proximate and direct result of Defendants' negligence, the NF infection continued to grow in, and affect, Mrs. Russell's organs. This caused her to suffer irreparable harm, and severe and permanent physical injuries and damages, prior to her death. These damages culminated in her death a few weeks later. If the Defendants would have properly administered and continued the full course of antibiotics when the NF was detected, Mrs. Russell would not have passed away when she did. She incurred increased medical care and treatment, severe pain and suffering, mental anguish, inconvenience and discomfort,

diminished enjoyment of life, and financial damages, prior to her death, due to the negligence of Defendants. As a result of Mrs. Russell's death, Plaintiff also incurred funeral expenses, which are also claimed as damages.

49.    All of the losses, damages, injuries, sustained by Mrs. Russell, including her death, were directly and proximately caused by the negligence of Defendants, without any negligence on the part of Plaintiff contributing thereto.

WHEREFORE, Plaintiff Billy W. Russell, as Personal Representative of the Estate of Marjorie J. Russell, deceased, claims damages against Defendants in an amount greater than $75,000 to be determined by a jury, together with all costs.

## COUNT II – WRONGFUL DEATH CLAIM

50.    Plaintiff adopts and incorporates by reference herein all preceding paragraphs.

51.    Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

52.    As a result of the negligence of Defendants and the wrongful death of Marjorie J. Russell, Billy W. Russell, as the personal representative and serving spouse of Mrs. Russell, suffered severe mental anguish, emotional pain and suffering, and the loss of the society, companionship, comfort, protection, consortium, care, attention, advice, aid, counsel, association, training, guidance,

services, and education that the Decedent, Mrs. Russell, could have, and would have, afforded and rendered had she continued to live.

53.    By reasons of the actions of Defendants, which culminated in the death of the Decedent, Marjorie J. Russell, a cause of action has accrued in accordance with the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 and Pa. R.C.P. § 2202(a), to Billy W. Russell, the surviving spouse of the Decedent, Mrs. Russell, for the compensation to him for all the damages, injuries and losses, which he sustained and which were caused by the actions of Defendants as previously set forth, including but not limited to funeral expenses of the deceased and expenses of administration related to deceased's injuries.

54.    The deceased did not bring an action for personal injury during her lifetime and no other actions for the death of the decedent have been commenced again the Defendants.

55.    All of the losses, damages, injuries, sustained by Mrs. Russell, including her death, were directly and proximately caused by the negligence of Defendants, without any negligence on the part of Plaintiff contributing thereto.

WHEREFORE, Plaintiff Billy W. Russell, as the personal representative and surviving spouse of Marjorie J. Russell, deceased, claims damages against Defendants in an amount greater than $75,000 to be determined by a jury, together

with all costs.  Plaintiff Billy W. Russell, individually as the surviving spouse of, and as personal representative of the Estate of, Marjorie J. Russell, deceased, hereby demands a trial by jury.

Respectfully,

BLAKEY, YOST, BUPP & RAUSCH, LLP

Date: 6/11/18                    By:   */s/ Donald B. Hoyt*
                                       Donald B. Hoyt, Esquire   PA 18061
                                       17 East Market Street
                                       York, PA 17401
                                       Telephone: (717) 845-3674
                                       Facsimile: (717) 854-7839
                                       Email: DHoyt@blakeyyost.com


BEKMAN, MARDER & ADKINS, LLC

Date:  6/11/18                    By:   */s/ Paul D. Bekman*
                                       Paul D. Bekman
                                       *Pro Hac Vice Pending*
                                       bekman@bmalawfirm.com
                                       Aryeh M. Rabinowitz
                                       aryeh.rabinowitz@gmail.com
                                       *Pro Hac Vice Pending*
                                       300 W. Pratt Street, Suite 450
                                       Baltimore MD 21201